IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| KIMBERLY MCLEAN,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>MARTIN O'MALLEY,<br>Commissioner of Social Security,<br><br>　　　　Defendant. | Civil No. 23-00362 MWJS-KJM<br><br>ORDER REVERSING DECISION OF THE COMMISSIONER OF SOCIAL SECURITY AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS |

## **INTRODUCTION**

　　　Plaintiff Kimberly McLean—a former truck driver and warehouse worker who suffers from, among other things, fibromyalgia—appeals the denial of her application for Social Security disability insurance benefits.  She argues that the Administrative Law Judge (ALJ) did not adequately consider the unique characteristics of her disease, and as a result, failed to provide legally sufficient reasons for rejecting her testimony and other evidence about the severity of her symptoms.  The Court agrees that the ALJ did not provide legally sufficient reasons to reject McLean's testimony, and therefore REVERSES the decision denying McLean's application and REMANDS this case for further administrative proceedings.

# BACKGROUND

### A.     The Unique Attributes of Fibromyalgia

Fibromyalgia is "a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments, and other tissue." *Benecke v. Barnhart*, 379 F.3d 587, 589 (9th Cir. 2004).  Among the common symptoms of the disease are "chronic pain throughout the body, multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue."  *Id*. at 590.

What is atypical about the disease is that "those suffering from it have muscle strength, sensory functions, and reflexes that are normal."  *Revels v. Berryhill*, 874 F.3d 648, 656 (9th Cir. 2017) (cleaned up).  That is, "[t]heir joints appear normal, and further musculoskeletal examination indicates no objective joint swelling."  *Id.*  (internal quotation marks omitted).  For these reasons, fibromyalgia "is diagnosed entirely on the basis of the patients' reports of pain and other symptoms," and "there are no laboratory tests to confirm the diagnosis."  *Id.* (cleaned up); *see also id.* at 657 (explaining that "diagnosis of fibromyalgia does not rely on X-rays or MRIs").

"For a long time, fibromyalgia was poorly understood within much of the medical community," and indeed, "there used to be considerable skepticism that fibromyalgia was a real disease."  *Id.* at 656 (cleaned up).  But a "sea-change

2

occurred in 2012," when the Social Security Administration issued Social Security Ruling (SSR) 12-2P, "recognizing fibromyalgia as a valid 'basis for a finding of disability.'" *Id*. (quoting SSR 12-2P, 77 Fed. Reg. 43640, 43641 (July 25, 2012)). Among other things, SSR 12-2P recognizes that fibromyalgia's symptoms "wax and wane" and that "a person may have bad days and good days." SSR 12-2P, 77 Fed. Reg. at 43644 (internal quotation marks omitted).

### B.     The Proceedings in This Case

The Commissioner of Social Security uses a "five-step sequential evaluation process for determining whether an individual is disabled," *Revels*, 874 F.3d at 652, and the ALJ worked through each of those steps in this case.

At step one, the ALJ found that McLean has not engaged in "substantial gainful activity" since April 24, 2021.  ECF No. 6-3, at PageID.37 (Administrative Record (AR) at 19).  At step two, he found that McLean suffered from the severe impairment of fibromyalgia, as well as several other severe impairments: osteoarthritis of the bilateral knees, irritable bowel syndrome, obstructive sleep apnea, obesity, major depressive disorder, post-traumatic stress disorder, and social anxiety disorder.  *Id.*  At step three, the ALJ found that McLean's impairments, whether standing alone or combined, did not meet or medically equal the severity of an impairment that would qualify her as disabled without regard to age, education, or work experience.  *Id.* at PageID.38-39 (AR at 20-21).  For that

reason, the ALJ was required to make a finding about McLean's residual functional capacity, or "RFC."

Here is where the dispute between the parties arises, for while McLean represents that her fibromyalgia severely restricts her RFC, the ALJ concluded instead that McLean has the RFC to perform some light work. *Id.* at PageID.41 (AR at 23). McLean reported "difficulty reaching overhead, pushing/pulling, lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, stair climbing, and pain, numbness/burning/tingling, and medication side effects." *Id.* at PageID.43 (AR at 25). And at the hearing before the ALJ, McLean testified that she gets flare-ups "[a]bout three times a week, sometimes more," and that on a "bad day," her "legs feel like 200 pounds each," she has a "hard time lifting [her] head," and she is "usually in bed." *Id.* at PageID.66-67 (AR at 48-49).

The ALJ rejected McLean's representations because they were, in the ALJ's view, "not entirely consistent with the medical evidence and other evidence in the record." *Id.* at PageID.42 (AR at 24). The ALJ explained:

> [T]he claimant reported she cares for her children, although her husband and relatives help with the children and when she is non-functioning on bad days her husband takes over care 100%. She testified on a good day she tries to do house chores, but still needs to rest and is "out" the next day. The claimant also reported driving to pick up her son.

*Id.* at PageID.43 (AR at 25) (exhibit citations omitted). In addition, the ALJ noted that x-ray imaging, medical exam findings, treatment notes, and physical therapy

4

notes did not corroborate McLean's reported severity of impairments. *See id.* at PageID.43-44 (AR at 25-26).

The ALJ also did not credit the statements McLean submitted from a family medical specialist, Dr. Christopher Young. The ALJ found that "the opinion is not well supported by objective findings in Dr. Young's treatment notes." *Id.* at PageID.48 (AR at 30).[1] Likewise, the ALJ does not appear to have credited the statement provided by McLean's spouse, though the ALJ did not specifically address its credibility. *See id.* at PageID.43 (AR at 25). In that statement, McLean's spouse wrote that McLean's disability affected her ability to work because she was "constantly tired, does not go out, does not drive or needs to be driven," and "sometimes doesn't leave room for days at a time." *Id.* at PageID.253 (AR at 231).

Turning to step four, the ALJ found that McLean could no longer perform any relevant work in which she previously engaged. *Id.* at PageID.49 (AR at 31). But at step five, the ALJ found that McLean could perform other jobs that exist in significant numbers in the national economy, and therefore denied her application for benefits. *Id.* at PageID.50-51 (AR at 32-33). The Appeals Council thereafter

---

[1] By contrast, because he found that the opinions of initial state agency medical consultants were generally supported by the objective medical evidence, the ALJ generally found those opinions persuasive. ECF No. 6-3, at PageID.46-47 (AR at 28-29).

denied McLean's request for review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner. *Id.* at PageID.19-21 (AR at 1-3). McLean's appeal followed, and this Court has jurisdiction under 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

This Court must affirm an ALJ's disability determination unless "it is either not supported by substantial evidence or is based upon legal error." *Luther v. Berryhill*, 891 F.3d 872, 875 (9th Cir. 2018). And while "substantial means more than a mere scintilla," it requires "only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Woods v. Kijakazi*, 32 F.4th 785, 788 (9th Cir. 2022) (internal quotation marks omitted). "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

That said, the substantial evidence must be found in the administrative record. As the Ninth Circuit has explained, "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009). In *Bray*, for example, a district

court "chose to review [a] transferable skills finding based on what it assumed the ALJ to have determined," but the Ninth Circuit found that the district court erred because "meaningful review of an administrative decision requires access to the facts and reasons supporting that decision." *Id*. at 1226.

When an ALJ finds that a claimant is not malingering but instead has a severe impairment "which might reasonably produce the pain or other symptoms alleged," an ALJ can "reject the claimant's testimony about the severity of [their] symptoms only by offering specific, clear and convincing reasons for doing so." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492-93 (9th Cir. 2015) (internal quotation marks omitted); *see also Revels*, 874 F.3d at 655. Those reasons "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Brown-Hunter*, 806 F.3d at 493 (internal quotation marks omitted).

## DISCUSSION

In her appeal, McLean's principal contention is that the ALJ failed to provide legally sufficient reasons for rejecting her testimony regarding her fibromyalgia symptoms. The Court agrees and therefore remands this case for further administrative proceedings.

### A. The ALJ Did Not Provide Legally Sufficient Reasons for Rejecting McLean's Testimony About the Severity of Her Fibromyalgia-Related Symptoms

The ALJ found that McLean suffers from, among other things, the severe impairment of fibromyalgia. And the ALJ heard McLean's testimony that her symptoms were extremely severe. Nevertheless, the ALJ rejected McLean's testimony. To justify that rejection, Ninth Circuit precedent requires the ALJ to have "offer[ed] specific, clear and convincing reasons for doing so." *Brown-Hunter*, 806 F.3d at 492-93 (internal quotation marks omitted).

To meet this burden, the ALJ proffered two reasons for rejecting McLean's testimony. First, he noted that McLean "cares for her children" with help from her husband and relatives, "tries to do house chores" on "a good day," and once reported "driving to pick up her son." ECF No. 6-3, at PageID.43 (AR at 25). These activities, the ALJ found, were "inconsistent" with McLean's testimony about her symptoms. *Id.* Second, he observed that the objective medical evidence—including x-ray imaging, medical exam findings, treatment notes, and physical therapy notes—did not corroborate her testimony. *Id.* at PageID.42-44 (AR at 24-26).

Neither of these reasons is legally sufficient. The Ninth Circuit has provided that "[i]n evaluating whether a claimant's residual functional capacity renders them disabled because of fibromyalgia, the medical evidence must be construed in light

8

of fibromyalgia's unique symptoms and diagnostic methods," *Revels*, 874 F.3d at 662, and the ALJ's proffered reasons are not sufficient under this standard.

      1.  To begin with, in considering McLean's daily activities, the ALJ did not sufficiently engage with SSR 12-2P's guidance that the symptoms of fibromyalgia "wax and wane" and that "a person may have bad days and good days." SSR 12-2P, 77 Fed. Reg. at 43644 (internal quotation marks omitted).  The ALJ did not adequately explain how, viewed in the light of fibromyalgia's unique attributes, McLean's reported activities were inconsistent with her testimony about the severity of her symptoms.  For example, McLean reported that she "cares for her children, although her husband and relatives help with the children and when she is non-functioning on bad days her husband takes over care 100%." ECF No. 6-3, at PageID.43 (AR at 25).  McLean also reported that "on a good day she tries to do house chores, but still needs to rest and is 'out' the next day." *Id.*  The fact that McLean is able to engage in these activities on "good days" is not in any way inconsistent with her testimony about the severity of her symptoms on "bad days." Nor did the ALJ point to any evidence in the record to support the conclusion that McLean engaged in these activities on "bad days," or that she engaged in these activities more frequently than her testimony about symptoms would have supported.  To the contrary, the ALJ did not identify any evidence about the frequency of these activities.

9

Similarly, the ALJ's reference to McLean "driving to pick up her son," *id.*, does not call McLean's testimony into question. On a single day in October 2021, McLean was offered a "same day appointment" after being "contacted from [the] wait list," but turned it down because "she would be driving to get her son." ECF No. 6-8, at PageID.370-71 (AR at 347-48). Again, given the unique attributes of fibromyalgia, there is nothing inconsistent about McLean having an occasional good day in which she is able to drive and McLean having frequent bad days in which she cannot drive and generally stays in bed.

Nonetheless, the Commissioner argues that the ALJ's reliance on McLean's caregiver responsibilities and other activities is supported by the Ninth Circuit's decision in *Rollins v. Massanari*, 261 F.3d 853 (9th Cir. 2001). *See* ECF No. 11, at PageID.1402 ("[T]he Ninth Circuit has explained that a claimant's 'daily activities, such as attending to the needs of her two young children,' can undermine complaints of debilitating fibromyalgia symptoms, especially when the other caregiver works full-time." (quoting *Rollins*, 261 F.3d at 857)). But the facts of *Rollins* are far different from the administrative record in this case. In *Rollins*, the claimant reported that her "daily" activities included "cooking, housekeeping, laundry, shopping, attending therapy and various other meetings every week," as well as "attending to the needs of her two young children"—like "meals, bathing, emotional, discipline, etc."—because "her husband worked six days a week,

10

usually from early in the morning until 10 p.m." *Rollins*, 261 F.3d at 857.  No evidence in this case's administrative record suggests that McLean's household and childcare responsibilities are as onerous or as consistent as those of the claimant in *Rollins*.

Relying on *Rollins*, the Commissioner also argues that McLean's husband "would have been unable to assist her as much as she claimed" because he worked full time.  ECF No. 11, at PageID.1402 (citing AR at 43).  But again, there is no evidence in the record to support these proposed inferences.  The record provides no information about what care McLean's children generally require, how burdensome that care would be, and whether McLean's husband and other relatives are unable to provide it whenever McLean is having a bad day.[2]  And the ALJ did not ask McLean what kind of work her husband performed, whether his work hours were flexible, or whether he was able to telework or was required to work in an office.

The inferences at issue here are, therefore, less like those in *Rollins* and more like those in *Fryer v. Kijakazi*, where the claimant testified that her husband performed most of the housework.  No. 21-36004, 2022 WL 17958630 (9th Cir. Dec. 27, 2022).  The ALJ in *Fryer* found this testimony "inconsistent" with the fact

---

[2]    The administrative record indicates that McLean's children were thirteen and seven years old as of May 2021.  ECF No. 6-8, at PageID.339 (AR at 316).

11

that the claimant's husband was a "disabled veteran suffering from physical and mental disability" himself. *Id.* at *3 (internal quotation marks omitted). On appeal, however, the Ninth Circuit concluded that this inference was "unreasonable," given that the record "contain[ed] no information about the nature of Fryer's husband's disability." *Id.*

So too here. Although the Commissioner asserts that there is an "incongruity between Plaintiff's alleged limitations and her caregiving responsibilities," ECF No. 11, at PageID.1402, the administrative record does not support that inference.

2. The ALJ's second reason for rejecting McLean's testimony was that it was not corroborated by the objective medical evidence. But this emphasis "on the lack of objective medical evidence, while perhaps appropriate in certain contexts, was improper in light of the principle that an ALJ may not discredit a claimant's subjective fibromyalgia symptom testimony on the basis of normal examination results." *Kim v. O'Malley*, No. 23-cv-00321, 2024 WL 414423, at *4 (D. Haw. Feb. 5, 2024) (citing *Revels*, 874 F.3d at 666).

Put differently, although the ALJ pointed to the fact that x-ray imaging, medical exam findings, treatment notes, and physical therapy notes did not corroborate McLean's reported severity of impairments, the ALJ did not explain why this absence of objective medical corroboration should undermine McLean's

12

testimony. The Ninth Circuit has explained that "diagnosis of fibromyalgia does not rely on X-rays or MRIs" and that those suffering from the disease "have muscle strength, sensory functions, and reflexes that are normal," including joints that "appear normal." *Revels*, 874 F.3d at 656-57 (cleaned up).

The lack of objective medical evidence is not a legally sufficient reason, under these circumstances, to reject McLean's testimony about the severity of her fibromyalgia-related symptoms. And given the lack of any other legally sufficient reason for rejecting McLean's testimony, the Court remands for further proceedings.[3]

### B.  The Court Declines to Resolve McLean's Remaining Claims at This Time

McLean's appeal raises three other arguments—namely, that the ALJ improperly rejected the statements of her spouse, that he improperly rejected the

---

[3] To be sure, remand for further proceedings is not an automatic remedy in the face of error. On the one hand, the Court has the discretion to remand for an immediate grant of benefits in certain "unusual case[s]." *See, e.g.*, *Benecke*, 379 F.3d at 595. That would not be appropriate where, as here, "there are outstanding issues that must be resolved." *Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012). McLean does not argue otherwise. On the other hand, the Commissioner's decision should be affirmed, even in the face of error, if the error is harmless. *See, e.g.*, *Brown-Hunter*, 806 F.3d at 494 (explaining that an error is harmless if it is "inconsequential to the ultimate nondisability determination or if despite the legal error, the agency's path may reasonably be discerned" (cleaned up)). The error in rejecting McLean's severity-related testimony is not harmless on the facts of this case, and the Commissioner does not argue otherwise. *See, e.g.*, *id.* (holding that an ALJ's insufficiently explained rejection of claimant's testimony is not harmless error).

opinions of her physician, and that he improperly credited the opinions of initial state agency medical consultants.

The Commissioner, for his part, responds that under current regulations, the ALJ had no obligation to explain how he considered the spouse's statement (if he had an obligation to consider it at all).  *See* ECF No. 11, at PageID.1406 (citing *Fryer*, 2022 WL 17958630, at *3 n.1).  The Commissioner also argues that revised regulations from 2017 reduce the burden for an ALJ to reject the opinions of medical sources, and that this is true regardless of whether the disease is fibromyalgia or something else.[4]  *See id.* at PageID.1403-04 (citing *Woods*, 32 F.4th at 787).

The Court does not resolve these arguments at this time.  *See, e.g.*, *Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) (remanding for one reason and "declin[ing] to reach [an] alternative ground").  On remand, the ALJ should consider the credibility of McLean's own testimony under the proper standards set forth in *Revels* and SSR 12-2P, as discussed above.  Those further administrative proceedings may result in a grant of benefits to McLean, making it unnecessary to

---

[4] At the hearing, the Commissioner specifically pointed to the report of Dr. David Mai—a state physician who concluded that McLean could perform some light work, *see* ECF No. 6-4, at PageID.97-98 (AR at 78-79)—as evidence that supported the ALJ's conclusion.  Although the Court need not resolve this argument, it appears that Dr. Mai's opinion, like the ALJ's decision, did not consider the lack of objective medical evidence through the lens of fibromyalgia's unique symptoms.

resolve the other issues.  Alternatively, further administrative proceedings may shed additional light on the relative merits of McLean's remaining arguments, facilitating judicial review in a future appeal.  The Court therefore does not resolve those additional arguments now, and McLean remains free to present them anew if a future appeal becomes necessary.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision denying McLean's application for Social Security disability insurance benefits is REVERSED and REMANDED for further administrative proceedings consistent with this Order.

IT IS SO ORDERED.

DATED:  April 5, 2024, at Honolulu, Hawaiʻi.



/s/ Micah W.J. Smith
_____
Micah W.J. Smith
United States District Judge

Civil No. 23-00362 MWJS-KJM; *Kimberly McLean v. Martin O'Malley*; ORDER REVERSING DECISION OF THE COMMISSIONER OF SOCIAL SECURITY AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS